UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL GINART and<br>ALICE GINART | CIVIL ACTION |
| VERSUS | NO. 07-6841 |
| STATE FARM CASUALTY INSURANCE<br>COMPANY | SECTION "F" |

<u>ORDER AND REASONS</u>

Before the Court is defendant's Motion for Summary Judgment. For the reasons that follow, the motion is GRANTED.

**<u>Background</u>**

Plaintiffs insured their rental property located at 513 Center Street, Arabi, Louisiana, with a Standard Flood Insurance Policy (SFIP) issued by State Farm as a Write-Your-Own Program carrier pursuant to the National Flood Insurance Program (NFIP). The policy had coverage limits of $50,000 for the building and $20,000 for contents; State Farm has paid the policy limits. The only remaining claim is for payment under the Increased Cost of Compliance (ICC) coverage of the policy.

On April 12, 2006, FEMA released the Advisory Base Flood Elevation (ABFE) Guidelines for St. Bernard Parish, and the St. Bernard Parish Council issued a statement on April 18, 2006 regarding these ABFEs. Thereafter, on May 13, 2006, the plaintiffs contracted with Davie Shoring to elevate their property at or above the ABFE levels for a total cost of $29,680. On June 19, 2006, a

1

Substantial Damage Determination was issued for the property by the St. Bernard Parish Government. The property elevation was completed in July 2006, as reflected by a July 30, 2006 Elevation Certificate.

Then, on April 3, 2007, the St. Bernard Parish Council passed an ordinance "to adopt the flood guideline advisories released by FEMA on April 12, 2006," which became effective on June 4, 2007. On July 26, 2007 State Farm wrote to the plaintiffs stating that they did not qualify for ICC coverage. The plaintiffs filed suit on August 28, 2007.

The defendant moves for summary judgment, arguing that the plaintiffs are not eligible for ICC coverage because they elevated the property prior to the date the parish began enforcing FEMA's ABFEs for the parish. It contends that the Parish Council did not adopt the ABFEs with the April 18, 2006 statement, but, rather, adopted them with the passage of the ordinance on April 3, 2007. It further asserts that an insured may only recover payments for ICC if the parish was currently enforcing the elevation requirements; because the plaintiffs completed their elevation prior to the adoption of the ABFEs, they are not eligible for ICC coverage. Additionally, the defendant argues that the plaintiffs' state-law based extra-contractual claims are preempted by federal law.

The plaintiffs respond that the St. Bernard Parish Council

adopted the ABFEs on April 18, 2006, at which time an ordinance was introduced to adopt the ABFEs. The plaintiffs argue that they qualify for ICC coverage because their property was "substantially damaged" and the language of the SFIP covers compliance activities in areas which "are being changed" to zones with base flood elevations or in which base flood elevations "are being increased." Further, the plaintiffs assert the elevation was required to prevent their property from being demolished by the parish. Because elevation was required, under the language of the SFIP, the plaintiffs claim the elevation of their property should be reimbursed under the ICC coverage of the SFIP.

I.

Rule 56 of the Federal Rules of Civil Procedure instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported

motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.

A flood insurance policy issued under the NFIP is called a Standard Flood Insurance Policy. A SFIP is a "regulation of [FEMA], stating the conditions under which federal flood insurance funds may be disbursed to eligible policyholders." Marseilles Homeowners Condo. Ass'n, Inc. v. Fidelity Nat'l Ins. Co., 542 F.3d 1053, 1054 (5th Cir. 2008) (per curiam). The front page of every SFIP expressly states that all flood insurance policies are subject

to the terms of the National Flood Insurance Act of 1968 (NFIA), 42 U.S.C. § 4001, et seq., and the regulations found in Title 44 of the Code of Federal Regulations. Claimants are charged with constructive knowledge of the provisions of their policy (the SFIP) and the NFIP, "regardless of actual knowledge of what is in the [r]egulations or of the hardship resulting from innocent ignorance." Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385 (1947). Due to the statutory scheme of the NFIP and the fact that U.S. Treasury funds are at stake, strict adherence to the conditions for the payment of a claim is constitutionally required. Gowland v. Aetna, 143 F.3d 951, 953 (5th Cir. 1998).

The SFIP provides coverage for "Increased Cost of Compliance" in addition to the building and contents limits, up to $30,000 in this case. This pays an insured "to comply with a State or local floodplain management law or ordinance affecting repair or reconstruction of a structure suffering flood damage." 44 C.F.R. Pt. 61, App. A(1), Art. III(D)(1). There are two ways in which a property can qualify for this coverage: (1) if it is a "repetitive loss structure" or (2) if it is "substantially damaged," in that it has had flood damage in which the cost to repair equals or exceeds 50% of the market value of the structure at the time of the flood. Id. Art. III(D)(3). Both parties agree that only the second category is relevant to this case.

ICC coverage pays for compliance with floodplain management

laws that meet the minimum standards of the NFIP as found in 44 C.F.R. 60.3, as well as for compliance activities that exceed those standards under certain conditions. The applicable condition is:

> Elevation or floodproofing in any risk zone to preliminary or advisory base flood elevations provided by FEMA which the State or local government has adopted and is enforcing for flood-damaged structures in such areas. (This includes compliance activities in B, C, X, or D zones which are being changed to zones with base flood elevations. This also includes compliance activities in zones where base flood elevations are being increased, and a flood-damaged structure must comply with the higher advisory base flood elevation.)

44 C.F.R. Pt. 61, App. A(1), Art. III(D)(3)(b)(2).

## III.

The elevation of the plaintiffs' property does not qualify for reimbursement under the ICC coverage of the SFIP. The policy clearly provides that it will pay for costs "to comply with State or local floodplain management laws or ordinances." Further, it specifically states that it will only pay to comply with those advisory base flood elevations "provided by FEMA which the State or local government <u>has adopted and is enforcing</u>." The policy language unequivocally restricts authorized coverage for compliance activities when the local government is currently, not prospectively, enforcing the ABFEs.

The plaintiffs invoke language of the policy that lists examples of coverage: "compliance activities in B, C, X, or D zones which are being changed to zones with base flood elevations" and

6

"compliance activities in zones where the base flood elevations are being increased, and a flood-damaged structure must comply with the higher advisory base flood elevation." The plaintiffs note that the examples text uses language that infers ongoing action . . . "are being changed" and "are being increased" . . . to support their contentions that the St. Bernard Parish's proposed ordinance qualifies as local government enforcement. Additionally, the plaintiffs argue that they had to elevate the property to avoid demolition, and as such, the local government was enforcing the ABFEs. This Court is not persuaded.

The only document in the record issued by St. Bernard Parish as to the plaintiffs' property that predates the completion of the elevation is a June 19, 2006 substantial damage determination. That document states that the plaintiffs' property has been determined to be substantially damaged due to flooding. Further, it states that "[a]ll substantially damaged structures which do not meet Base Flood Elevations (BFE) established by FEMA will be required to meet current BFE standards." This statement clearly requires that <u>current</u> BFE standards must be met, not that the <u>anticipated</u> BFE standards, which have yet to be adopted, must be met. The plaintiffs admit that their contract was to elevate the property to the ABFE levels, which were not yet required or adopted by the parish. The St. Bernard Parish Council statement dated April 18, 2006, states that the Council "will consider adopting the

7

Advisory Base Flood Elevations" and that "[a]doption of the ordinance will take place at a subsequent Council meeting." It goes on to caution that "[r]esidents should be aware that once a new FIRM (flood maps) is announced and <u>subsequently adopted</u>, homeowners will have to come into compliance with the new maps upon new construction or upon any substantial damage situation." (Emphasis added.) And the Council statement observes that substantially damaged properties will have to comply with "whatever current maps are in place" and the "most current elevation requirements." Nowhere in the Council statement does the Parish Council state that it is adopting the ABFEs on April 18, 2006, and, in fact, the Council explicitly adopted the FEMA ABFEs at its April 3, 2007 meeting, effective on June 4, 2007. The plaintiffs' argument that the Council adopted these ABFEs prior to April 3, 2007 fails.

Finally, FEMA issued a guidance document on how to interpret the ICC provisions of SFIPs on November 18, 2005. An agency's interpretation of its own legislative rule "must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation it interprets." Stinson v. U.S., 508 U.S. 36, 36-37 (1993). In Bulletin W-05081, FEMA stated:

> If the community adopts and enforces the FEMA provided ABFEs, Increased Cost of Compliance (ICC) benefits will be available to elevate buildings to the ABFEs. If the community does not adopt and enforce the ABFEs, ICC benefits will only pay to elevate to the BFE on the

8

current Flood Insurance Rate Map (FIRM). That statement is consistent with the SFIP, and, therefore, controlling to this Court's determination.

For these reasons, the plaintiffs' ICC claim fails. Because they elevated their property prior to the adoption of the ABFEs, the plaintiffs fall outside of the requirements of the SFIP that the local government has adopted regarding the ABFEs.

Finally, any state law based tort or extra-contractual claim that the plaintiffs have asserted based on State Farm's alleged bad faith handling of the plaintiffs' flood loss claims is preempted by federal law pursuant to regulations promulgated by FEMA under the authority of the National Flood Insurance Act of 1968. <u>Gallup v. Omaha Prop. & Cas. Ins.</u>, 434 F.3d 341 (5th Cir. 2005) (citing <u>Wright v. Allstate Ins. Co.</u>, 415 F.3d 384 (5th Cir. 2005)).[1]

Accordingly, the defendant's motion is GRANTED. The plaintiffs' claims are dismissed.

New Orleans, Louisiana, March 4, 2009.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[1] Regrettably, plaintiffs might well feel they have been penalized for conscientiously acting with dispatch to protect their property and return to their community. After all, it is hoped that government should help deserving people in need, not hinder them. But this Court is not a legislative body and is bound by the clear texts at issue.